# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**JAMES V. VEST,**

**Defendant.**                                          No. 06-CR-30011-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

On January 19, 2006 Defendant James Vest ("Defendant"), a Sergeant with the Illinois State Police ("ISP") assigned to District 11, was indicted on one count of knowingly possessing a machine gun in violation of **18 U.S.C. § 922(o)(1)** and **924(a)(2)**. (Doc. 6.) Approximately one month later, Defendant filed a motion to suppress incriminating statements he made during the course of an interview with Bureau of Alcohol, Tobacco, and Firearms ("ATF") Agent Robert Nosbisch. (Doc. 18.) The government responded in opposition, and Defendant later amended his motion. (Docs. 21, 22.) The Court held a hearing in this case on March 9, 2006. After requiring the Defendant to make an oral argument to supplement his written motions

at the beginning of the hearing, the Court determined that Defendant had met his initial burden, and the proceeding was converted to an evidentiary hearing on Defendant's Amended Motion to Suppress. (Doc. 18.) After the hearing, the Court took Defendant's motion under advisement.

## II. Background

The statements in question were made by Defendant to Agent Nosbisch at ISP's District 11 headquarters ("headquarters") on December 29, 2005. On that date, a supervising officer, Lieutenant Michael Irwin, phoned Defendant and advised him that his presence was needed at headquarters. Approximately thirty minutes later, Defendant arrived at District 11, at which point Irwin directed him to an office/conference-room area where Nosbisch and fellow AFT Agent Paul Heiser were present. Upon arriving in the room, Defendant was told by Nosbisch that he (Nosbisch) had questions. Defendant asked if Irwin could stay during questioning, and this request was granted.

At or around that point, Nosbisch began questioning Defendant, primarily about the weapon that is now the subject of Defendant's indictment. Nosbisch made clear to Defendant that ATF, not ISP, was conducting the investigation, and further that Defendant was not under arrest. Shortly thereafter, Defendant asked Nosbisch if he would like him (Defendant) to retrieve the weapon. Nosbisch replied in the affirmative, and after Defendant signed a consent form, he, along with Irwin, Nosbisch, and Heiser, traveled to Defendant's residence. Defendant and Irwin rode together, followed by Nosbisch and Heiser. It was agreed that

Defendant and Irwin would enter Defendant's home. They did so, retrieved the weapon, and exited. The parties then traveled back to headquarters.

Upon returning to headquarters, Nosbisch went to get a soda and Defendant went to use the restroom. The parties reconvened in the conference-room area, and questioning resumed, with the door open. At some point during this questioning, Irwin excused himself due to what he perceived to be a potential conflict of interest. Nosbisch continued questioning Defendant. Nosbisch then asked Defendant if he would like to make a written statement. At this point, Defendant stated that he wished to speak to an attorney before proceeding further. Nosbisch interpreted this as an invocation of Defendant's right to counsel and promptly ended the interview and left the room. At the interview's conclusion, Defendant was not placed under arrest and his movement was not restricted in any manner.

### III. Analysis

Defendant has advanced two potential grounds for suppression. First, he argues that his statements are inadmissible because he was not read his **Miranda** rights. Second, he argues that his statements were coerced. (*See* Doc. 22.) The Court considers each argument in turn below.

**A.    *Miranda* and "In Custody"**

In order to protect an individual's privilege against self-incrimination under the Fifth Amendment, the Supreme Court held in **Miranda v. Arizona, 384 U.S. 436, 444 (1966)** that suspects must be advised of certain rights prior to

"custodial interrogation." *Id.* For *Miranda*'s warning requirement to be triggered, then, a suspect must both be in custody and subject to interrogation. *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002). "An individual is considered 'in custody' when his movement is restrained to the degree comparable to a formal arrest." *Id.* As the Supreme Court has held, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted); *see also Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (noting that custodial interrogation only takes place "'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way'"). "Two discrete inquires are essential to the [in-custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Keohane*, 516 U.S at 107. The "crucial question" is whether a "reasonable person in [the suspect's] position" would believe that she was in custody as defined in *Miranda*. *Id.* at 113-14 (citation omitted). "The initial determination of custody," that is, "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *A.M. v. Butler*, 360 F.3d 787, 796 (7th Cir. 2004) (quoting *Stansbury v. California*, 511 U.S. 318, 232 (1994)). The fact that an interrogation occurs at a police station does not by itself

require **Miranda** warnings.  ***Oregon v. Mathiason* 429 U.S. 492, 495-96 (1977)**.

Defendant has identified several facts suggesting that he was in custody when questioned by Nosbisch.  First, he points out that he was directed to come in headquarters by his superior officer, Irwin.  Second, he indicates that Irwin told him to enter the room in which he was ultimately questioned by Nosbisch.  Third, he alludes to the fact that Irwin was present for much of the time he was questioned by Nosbisch. And fourth, he indicates that Nosbisch followed him from to his home and then from his home back to headquarters.  These facts, Defendant argues, are together sufficient to support a finding that he was in custody during questioning.[1]

Defendant's arguments notwithstanding, the evidence before the Court militates in favor of a finding that Defendant was not in custody while questioned by

---

[1] It should be pointed out that Defendant conceded at the hearing that he is not helped in this case by the ***Garrity v. New Jersey*, 385 U.S. 493 (1967)**, line of cases.  ***Garrity*** and its progeny established that a public employer cannot force an employee

> to make a statement, even out of court, that might be used as evidence that he had committed a crime.  It has every right to investigate allegations of misconduct, including criminal misconduct by its employees, and even to force them to answer questions pertinent to the investigation, but if it does that it must give them immunity from criminal prosecution on the basis of their answers.

***Atwell v. Lisle Park Dist.*, 286 F.3d 987, 989 (7th Cir. 2002)** (citations omitted).  Here, ***Garrity*** does not apply because Defendant's employer, ISP, (1) was not the party questioning him; (2) did not order him to answer Nosbisch's questions or ask him to do anything more than come in to headquarters and proceed to an office in which Agent Nosbisch was present; and (3) did not threaten him with discharge or other sanction if he refused to cooperate.  The only reason an ISP officer other than Defendant (Irwin) was present during questioning, furthermore, was because Defendant requested that he be present.

Nosbisch. To begin with, although Defendant's superior officer (Irwin) asked him to come to ISP headquarters and then showed him to an interview room where ATF agents were present, Defendant drove himself to ISP headquarters and, once there, was not handcuffed, photographed, or fingerprinted. Defendant, furthermore, was not restrained, patted-down, searched, or subject to any other form of restriction on his movement while being questioned. Nor was he under an order or directive to remain in the conference-room area or answer any questions posed by ATF. Instead, Defendant was told, upon entering the conference-room area, that he was not under arrest and that ATF simply wanted to ask him questions.

On top of this, the door to the conference-room area largely remained open throughout questioning, and Defendant had sufficient freedom of movement to freely use the restroom upon returning to headquarters. His request that Irwin remain present during questioning, moreover, was granted, as was his request to ride with Irwin during the trip to Defendant's home. Additionally, during the trip to Defendant's residence, Defendant was allowed to enter his home and retrieve a dangerous weapon without ATF supervision. Finally, when Defendant asked to speak with an attorney before making a written statement, the ATF agents immediately concluded their questioning and left. Defendant was not arrested or restrained thereafter. Furthermore, Irwin, who was present for most of the interview stated that he believed that Vest was free to leave and stated he did not give him an order that he could not leave.

Collectively, these facts suggest that under the reasonable-person test

set forth by the Supreme Court and Seventh Circuit case law discussed *supra*, Defendant was not in custody when questioned on December 29, 2005. For this reason, the Court finds that Defendant's Fifth Amendment right against self incrimination was not violated, and his statements need not be suppressed due to the ATF agents' failure to advise Defendant of the rights laid out in ***Miranda***.

### B. "Coerced, Involuntary, and Unconstitutional" Statements

As the Seventh Circuit has recently stated with regard to the voluntariness of statements made to police:

> In evaluating the voluntariness of a waiver or confession, a court must consider the totality of the circumstances. Specifically, a confession is "involuntary" only if circumstances demonstrate that police coercion or overreaching overbore the accused's will and caused the confession. Moreover, such coercion or overreaching is a necessary predicate to a finding of involuntariness. Put differently, a "'confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" In applying the totality test, we have identified a variety of factors which a court may consider to assess voluntariness, including but not limited to: whether the defendant was read his Miranda rights; the individualized characteristics of the defendant (i.e., age, intelligence level, education, mental state); interrogation conditions (i.e., duration, environment, access to restroom facilities and food); and the conduct of law enforcement officers (i.e., use of physical punishment).

***Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004)** (citations omitted). In addition to these factors, courts also consider an individual's "prior experience with the police." *See **Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004)**; ***United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir. 1994)**; ***Holland v. McGinnis*, 963**

**F.2d 1044, 1052 (7th Cir. 1992)**. Further, the Seventh Circuit allows "considerable latitude in playing on the guilt and fears of the person interrogated in order to extract a confession that he will shortly regret having given." ***United States v. Ceballos*, 302 F.2d 679, 694 (7th Cir. 2002)** (citation omitted). The determination of voluntariness, then, depends "'depends upon a weighing of circumstances of pressure against the power of resistance of the person confessing.'" ***Dickerson v. United States*, 530 U.S. 428, 434 (2000)** (citation omitted). The government has the burden to demonstrate, by a preponderance of the evidence, that Defendant's confession was not "secured through psychological or physical intimidation but rather was the 'product of a rational intellect and free will.'" ***United States v. Haddon*, 927 F.2d 942, 945 (7th Cir. 1991)** (citation omitted).

In this case, Defendant indicates that largely because a superior officer directed him to come into headquarters for questioning, led him to a room to be questioned, and then was present during questioning, his statements were coerced and involuntary. The Court, however, must find to the contrary. At no point on December 29, 2005, that is, can it fairly be said that Defendant's free will was overborne. To begin with, Defendant was not asked or ordered by a superior to answer the questions posed by Nosbisch. Instead, Defendant's superior officer — Irwin — simply called Defendant into headquarters and then led him to the room where the interview was to take place. As Irwin has testified, Defendant was not instructed by ISP, including by Irwin himself, to answer any questions during the

interview. Rather, Nosbisch, not Irwin, was doing the questioning, and Irwin was only present because of Defendant's request that he stay. Nosbisch, further, made it clear to Defendant both that ATF was conducting the investigation and that ISP was not involved. There was no attempt made, in other words, to suggest to Defendant that he would face any sort of punishment or discipline from ISP upon failing to respond to questioning.

Other factors that this Court must consider in the totality-of-the-circumstances analysis further counsel against a finding that Defendant's statements were involuntary. First, Defendant is a veteran police officer with more than a decade-and-half's worth of experience interacting with law-enforcement personnel. The chance that he would feel intimidated in an interview with an officer of the law — in his very place of employment, no less — can only be characterized as slight. Second, there is no indication from the evidence that Defendant was mistreated or otherwise deceived during his questioning. Defendant's request that Irwin remain present during questioning, for example, was granted, as was his request to ride in Irwin's vehicle during the trip to his residence. Third, ATF agents employed no physical force or other oppressive tactics in questioning Defendant. The door, in fact, was left open as Defendant was being questioned, and Defendant's invocation of his right to counsel was immediately honored.

Together, these facts suggest that Defendant's December 29th statements were voluntarily made, and are thus admissible. Because the Court sees no evidence of coercion here, and in light of the totality of the circumstances, the

Court finds that Defendant's statements were a product of his own free will, and thus need not be suppressed.

### IV. Conclusion

Therefore, for the reasons above, the Court must **DENY** Defendant's Amended Motion to Suppress. (Doc. 22.)

**IT IS SO ORDERED.**

Signed this 13th day of March, 2006.

/s/        David  RHerndon
**United States District Judge**