**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**JAMES V. VEST,**

     **Defendant.**                 **Case No. 06-cr-30011-DRH**


<u>**MEMORANDUM & ORDER**</u>

**HERNDON, District Judge:**

### I. <u>INTRODUCTION</u>

       A man with a gun can either be a deranged sociopath or a decorated hero, depending upon the context of the circumstances.  Society must identify and define wrongful behavior in order to continue in a civilized manner.  Under the United States Constitution, this ability to provide a definition is given to Congress – a legislative body elected by the people.  However, society even struggles with this concept.  Some believe the Constitution is the last word, period.  For them, the right to bear arms is inviolable.  **See U.S. CONST. amend. II.**  Rather than a case interpreting an argument of such high social order, this case involves a portion of a statute that was years in drafting and passing.  Whereupon Congress executed its constitutional duty to legislate social policy.  Everyone can likely agree that the proper definition of who is to legally possess what kind of gun is not properly

bestowed upon prosecutors, the judicial system or members of a jury. In a democracy which prides itself on the rights of due process, fair notice and warning, a particular situation has arisen that calls for the adherence to constitutional fundamentals.

This is a case about a man with a gun – in this case, a law enforcement officer for the Illinois State Police, Sergeant Vest. Charged with illegal transfer and possession of a machine gun, Vest faces not only the end of his law enforcement career, but also loss of liberty. Given that such punishment could be proper for illegal behavior, in this particular case, the Court finds it inappropriate to allow the case to proceed on the merits, as it deems the statutes discussed within are unconstitutionally vague as applied to Vest.

## II.  <u>BACKGROUND</u>

### A.    FACTS

Defendant James Vest ("Vest") was indicted on three separate counts. One count was for knowingly possessing a machine gun in violation of **18 U.S.C. §§ 922(o)** and **924(a)(2)**.  The other two counts were for knowingly possessing a machine gun transferred in violation **26 U.S.C. §§ 5812, 5861(b)** and **5871**, and for knowingly possessing of a machine gun not registered to Vest in the National Firearms Registration and Transfer Record as required, thereby in violation of **26 U.S.C. §§ 5812, 5861(d)** and **5871** (*see* Superceding Indictment (hereinafter, the "Indictment") (Doc. 30)).  To provide a brief account of the facts surrounding the

charges filed against Vest, the Court turns to the record.

At the time he was initially questioned by an ATF agent and later arrested, Vest was working as an Illinois State Trooper, serving as the lead rifle instructor for the Illinois State Police, District 11 Headquarters (Doc. 62, p. 3). He is currently suspended from duty and remains on administrative leave (*Id*.). Vest has been with the Illinois State Police since December, 1989 (Doc. 62, Ex. 1 - Affidavit of James V. Vest, ¶ 1). Prior to becoming the lead rifle instructor, Vest was assigned as the full time assistant to the Team Leader of the Region V (south) Tactical Response Team ("TRT" but sometimes referred to as the "SWAT" team), in March, 1998, serving as the equipment officer (*Id*. at ¶ 3). It was during the time of his assignment as equipment officer, on July 10, 1998, that Vest ordered the machine gun at issue in this criminal case – a Colt M16A2E M4 automatic rifle from Botach Tactical (*Id*. at ¶ 4, Ex. 1-B).

Although the transfer records appear to indicate that the machine gun was registered to the Illinois State Police, the Government bases its prosecution upon the theory that Vest allegedly "illegally utilized Illinois State Police letterhead to compose a letter to obtain the . . . machine gun," as well as "illegally utilized an Illinois State Police Tax Exception Letter in conjunction with the illegal[ly] composed letter on the ISP letter head" (Doc. 21, Ex. 2, p. 2 - ATF Investigation Report). Accordingly, the Government contends Vest lacked authority to purchase the machine gun on behalf of the Illinois State Police, and therefore illegally possessed the weapon.

Vest, on the other hand, maintains that he did receive the proper authority from a supervising officer to purchase the machine gun on behalf of the Illinois State Police, and also, by virtue of his former position as equipment officer and current position as lead rifle instructor, he had inherent authority to legally possess the weapon (Doc. 84 - Transcript on August 17, 2006 Motion to Dismiss Hearing ("Transcript"), p. 37:19-40:1).  Thus, he has chosen to invoke the public authority defense, claiming he falls under the "law enforcement exception" as stated in subsection **(2)(A)** of **18 U.S.C. § 922(o)** (*see* Doc. 36).  Further, Vest argues that he has never used the machine gun for anything but law enforcement purposes, and emphasizes the important fact that the Government admits it has *no* evidence Vest ever used the machine gun otherwise (Doc. 41 - Transcript of March 9, 2006 Motion to Suppress Hearing, p. 90:18-22).

**B.    PROCEDURAL HISTORY**

In his defense, Vest has filed several Motions to Dismiss.  The first focused on dismissing all three counts of the Superceding Indictment for failure to plead an essential element of the Indictment (Doc. 38).  The Motion argued in the alternative that all three counts should be dismissed for being unconstitutionally vague (*Id.*).  Vest elected to reserve this "alternative" argument regarding the constitutionality of the charging statutes until after the Motion was determined based on his essential element argument, if necessary (*Id.*).

A hearing was conducted on July 20, 2006, regarding the first portion of the Motion.  The Court rejected Vest's argument, finding that the law enforcement

exception of **§ 922(o)** was properly construed as an affirmative defense rather than as an essential element of the Indictment (Doc. 53).  As part of its Order, the Court required the parties to file further briefings on the constitutional issue regarding Vest's Motion to Dismiss, if he so intended to pursue this argument (*Id.*).  Pursuant to the Court's Order, Vest filed a Memorandum in Support of Motion to Dismiss (Doc. 38) Counts II and III of the Superceding Indictment (Doc. 68), along with a supporting affidavit (Doc. 68, Ex. 1 - "Vest Aff.").  Additionally, Vest moved to dismiss Count I, arguing that **18 U.S.C. § 922(o)** was unconstitutional "as applied," (Doc. 55) with supporting memorandum (Doc. 62).  The Government responded in opposition to each (Docs. 78 & 66).  A hearing was conducted on these Motions on August 17, 2006 (Doc. 83).

**C.     THE PARTIES' ARGUMENTS**

Although his Motions seemed to indicate both a facial and an "as applied" challenge to the constitutionality of the subject-matter statutes of the Indictment, during the hearing, Vest's attorneys clarified their argument was based solely upon an "as applied" challenge (Doc. 84 - Transcript, 13: 9-12).  The statutes Vest challenge as being unconstitutionally vague are **18 U.S.C. § 922(o)(2)(A)**, **26 U.S.C. § 5861(b)** and **26 U.S.C. § 5861(d)** (*see* Docs. 38 & 68; *see also* Docs. 55 & 62).  The crux of Vest's argument is that the three statutes within the Indictment must be declared unconstitutionally vague as applied to the *specific facts* of this case (Doc. 62, p. 10).  Explaining that, at the time of arrest, Vest currently served as a

lead rifle instructor for the Illinois State Police, the facts show that his possession of the weapon at issue "was strictly related to these unusual law enforcement functions"[1] (*Id*. at 11).

Vest also cites this Court's prior Order (Doc. 53, p. 18) denying the Motion to Dismiss Indictment on the essential element argument, for the proposition that authority to possess an illegal item can sometimes be inherent in the scope of one's employment (Doc. 62, p. 12).[2] Vest argues that he, too, had inherent authority as the rifle instructor for the Illinois State Police to possess the machine gun at issue in this case, yet the statute, as applied, makes his possession criminal. Without the requisite criminal intent present in the statutes, Vest argues that being charged for the knowing possession of a machine gun when such possession is an inherent part of his employment, is unconstitutional (*Id*. at 12).

More specifically, Vest argues that the law enforcement exception to **§ 922(o)** is unconstitutionally vague because the phrase "under the authority" is capable of reasonably differing interpretations, thereby failing to give law enforcement officers proper notice of what behavior is prohibited (Doc. 84 -

---

[1]  Some of Vest's duties as a rifle instructor were teaching officers to fire a variety of weapons, as well as teaching them to recognize the sound of various weapons, including automatic, high-powered rifles (Doc. 62, pp. 10-11).

[2]  The following passage was cited (Doc. 52, p. 18):
> [H]ow does an officer possess crack cocaine when he arrests a drug dealer? How does a courtroom deputy clerk handle the same crack when it is admitted into evidence or what of the jurors when the crack is passed down the line to view it in the jury box or hold it in the jury room or when brought into the courtroom to view the evidence? The Court is not aware of authorizing statutes for each such instance.

Transcript, pp. 12-40).  In other words, Vest posits the question: how do officers know when they have proper authority?  Further, what *constitutes* authority?  This lack of a structured definition for what constitutes proper "authority" under the law enforcement exception is what makes the statutes susceptible to arbitrary enforcement, providing yet another reason as to why **§ 922(o)(2)(A)** is unconstitutional as applied to Vest (*Id.*).  This arbitrary enforcement argument is also the reason why Vest believes **§§ 5861(b)** and **(d)** should be declared unconstitutional as applied, as these statutes contain no exception for law enforcement officers at all,[3] thereby rendering their application to Vest "absurd" (Doc. 68, p. 4).

The Government's Response first argues that **§ 922(o)** is not vague as applied to Vest, observing that his arguments clearly recognize **§ 922(o)**'s "unequivocal" ban on machine gun possession (Doc. 66, p. 1).  The Government also proffers that because the Court has determined the law enforcement exception stated in subsection **(2)(A)** of **§ 922(o)** is an affirmative defense instead of an essential element of the offense, the Court should only look to **§ 922(o)(1)** itself in analyzing whether the statute is void for vagueness, or whether it "provides notice of the prohibited conduct to a reasonable degree of certainty" (*Id.* at 2, citing ***United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006)(quoting *Boyce Motor Lines v. United***

---

[3] Vest observes that **§ 922(o)** was not adopted until 20 years *after* **§ 5861(d)** was enacted, posing the inference that this is why **§ 5861** does not contain a law enforcement exception as found in **§ 922(o)** (Doc. 68, p. 5).

*States*, 342 U.S. 337, 340 (1952)))(internal citations omitted).

The Government's main argument is that § 922(o) is not vague because it clearly gives notice that the act of possessing and/or transferring a machine gun puts one at risk for being in violation of the statute (*Id*., citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Wilson*, 159 F.3d 280, 288 (7th Cir. 1998)).   Next, the Government asserts that "[t]he proscribing [language of § 922(o)], rather than the exempting language [of the law enforcement exception] is that which is the bellwether of adequate notice, as evidenced by the Supreme Court's focus on the former . . ." (*Id*. at 3).  In support, the Government quotes the United States Supreme Court in *Boyce Motor Lines*, 342 U.S. at 340:

> [T]he practical necessities of discharging the business of the government inevitably limit the specificity with which legislators can spell out prohibitions.   Consequently no more than a reasonable degree of certainty can be demanded.  Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

As in *Boyce*, the Government concludes that Defendant himself chose "to tread past the well-defined boundaries of [§ 922(o)] . . . at his own peril."  Simply because Defendant failed to insure his actions "'[did] not fall outside the legal limits [of § 922(o)],'" the Government argues, should not undermine § 922(o)'s adequacy of notice of the prohibited conduct (Doc. 66, pp. 3-4).  Likewise, the Government argues that the language at issue in the law enforcement exception is subject to but one interpretation: only governmental entities can confer proper authority upon

police officers to legally possess machine guns (*Id*. at 4-6).

The Government further opposes the dismissal of Counts II and III, arguing that **§ 5861** "has been recognized as 'part of the web of regulation aiding enforcement of the transfer tax provision in [§] **5811**.'" (Doc. 78, p. 2, citing **United States v. Lim, 444 F.3d 910, 913 (7th Cir. 2006)**).  The Seventh Circuit in **Lim** recognized that the National Firearms Act requires one who possesses an applicable firearm "to ensure that the weapon is properly registered before taking possession of it" (Doc. 78, p. 2, citing **Lim, 444 F.3d at 913**).

The Government also points out that **§ 5853** of the same act exempts from taxation for the transfer of a machine gun to certain government entities, citing subsection (a), which states "A firearm may be transferred without the payment of the transfer tax . . . to any official police organization of such a government entity engaged in criminal investigations" (Doc. 78, p. 2).  The Government also cites **United States v. Jones, 976 F.2d 176, 184 (4th Cir. 1992)**, which stated that **§ 5853** exemptions did not "relieve those exempted from the taxes from the regulatory requirements adopted to aid in the enforcement of these taxes against otherwise covered individuals and transactions" (Doc. 78, p. 3).  **Jones** held that gun manufacturers dealing with the United States were exempted from the provisions of **§ 5851** (now **§ 5861**) (Doc. 78, p. 3).  **United States v. Ross, 9 F.3d 1182, 1193 (7h Cir. 1993)** is also cited by the Government for its holding that the analysis in **Jones** was well-reasoned and equally applicable to **§ 5861(d)** (*Id*.).

The Government next argues that both **§§ 5861(b)** and **(d)** are not unconstitutionally vague, as Vest's argument asserts.  Instead, the Government asserts that because **§ 5861** is "essentially 'a regulatory measure in the interest of public safety,' its lack of a *mens rea* is permissible" (*Id*. at 5, citing ***United States v. Freed*, 401 U.S. 601, 607 (1971)**).  The Government also cites ***United States v. Hunter*, F. Supp. 235, 256 (E.D. Mich. 1994)**, for the proposition that Defendant "'cannot be allowed to defraud the ATF with phony applications and records and then use the ill- or under-informed approvals of registrations and transfers by that agency as a shield against criminal prosecution'" (*Id*. at 6).  As observed by the Court and also noted by the parties, binding precedent on point with the facts or legal issues in this matter does not seem to exist, to serve as guidance. In fact, Vest notes that there has not been a prosecution of a police officer for possession of a machine gun under **§ 922(o)** in 20 years (Doc. 84 - Transcript, 17:16-23).  Being cognizant of this fact, the Court beings its analysis.

### III. <u>ANALYSIS</u>

### A.    VAGUENESS DOCTRINE

Due process requires that a penal statute be sufficiently definite to give notice to a person of ordinary intelligence of the prohibited conduct, in order for that person to conform his or her conduct  within the proscribed legal confines. ***Kolender v. Lawson*, 461 U.S. 352, 357 (1983)**.  Therefore, one may challenge the constitutionality of a penal statute based upon the argument that the statute is vague,

as the "[vagueness] doctrine incorporates notions of fair notice or warning." **Smith v. Goguen, 415 U.S. 566, 572-73 (1974)**. "Vagueness challenges that do not involve First Amendment freedoms must be analyzed as applied to the specific facts of the case at hand." **Maynard v. Cartwright, 486 U.S. 356, 361 (1988); United States v. Lim, 444 F.3d 910, 915 (7th Cir. 2006)(citing United States v. Mazurie, 419 U.S. 544, 550 (1975))**.

A penal statute may be void for vagueness "for either of two independent reasons." **City of Chicago v. Morales, 527 U.S. 41, 56 (1999)**. First, a statute may be unconstitutionally vague if it "fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." **Id. (citing Kolender, 461 U.S. at 357)**. A statute may also be unconstitutionally vague if it "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." **Lim, 444 F.3d at 915 (citing Karlin v. Foust, 188 F.3d 446, 458-59 (7th Cir. 1999))**. As observed by the United States Supreme Court, the requirement that a penal statute provide minimal guidelines in order to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness doctrine." **Smith, 415 U.S. at 574**. Without these minimal enforcement guidelines provided within a statute,"policemen, prosecutors, and juries [are allowed] to pursue their personal predilections." **Id. at 575**.

**B.     THE LAW ENFORCEMENT EXCEPTION – 26 U.S.C. § 922(o)(2)(A)**

**18 U.S.C. § 922(o)** reads (emphasis added):

**(o)(1)**   Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun.

   **(2)**   This subsection does not apply with respect to--

     **(A)**   *a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or*

     **(B)**   any lawful transfer or lawful possession of a machine gun that was lawfully possessed before the date this subsection takes effect.

As Vest is not challenging that the Indictment violates any First Amendment rights, the Court's constitutional analysis will be strictly "as applied" to the specific facts regarding this case.  Count I of the Indictment charges Vest with a violation of **§ 922(o)**, for the knowing possession of a machine gun.  Because Vest maintains that he is an Illinois State police officer and possessed the machine gun at issue as part of his particular employment, the instant dispute focuses on whether the law enforcement exception, as stated in **§ 922(o)(2)(A)**, is unconstitutionally vague, as applied.  Vest offered two main arguments throughout his briefings and during the August 17, 2006 hearing regarding the vagueness stated in the law enforcement exception of **§ 922(o)(2)(A)**.  First, the parties debated on whether the phrase "under the authority of" was vague and ambiguous, thereby failing to give police officers proper notice as to what exactly constitutes or creates "authority" to

possess a weapon legally under **§ 922(o)(2)(A)**.  Vest next introduced the argument that **§ 922(o)** was vague because it allowed for arbitrary enforcement by government agencies – in this case the ATF and the U.S. Attorneys' Office (Doc. 84 - Transcript, 15:15-17; 30:7-21).

### 1.    Failure to Give Notice of Prohibited Conduct

Vest argues that because **§ 922(o)(2)(A)** is vague, he was not put on notice that his possession of the machine gun was illegal, if indeed it was.  As a law enforcement officer, but more specifically, as a former Illinois State Police equipment officer and later as their lead rifle instructor, Vest asserts that he, or a person of ordinary intelligence under his circumstances, would be unable to decipher the meaning of "authority" so as to make his possession legal, because the statute itself provides no definition or other guidance as to what constitutes proper "authority." Another point arose during the discourse between Vest's attorneys and the Court, revealing that the phrase within the law enforcement exception, "*by or under* the authority of," may also be ambiguous and vague (Doc. 84 - Transcript, 57:12-24). Simply put, a law enforcement officer may reasonably be considered an agent of the State police department by which he or she is employed.  If so, the officer's possession of the machine gun could be deemed possession *by* that department, thereby falling within the legal ambit of the law enforcement exception of **§ 922(o)**. The Government, to the contrary, raises the argument that proper authority to possess machine guns legally under the law enforcement exception *only* applies to

the federal and state entities, and *not* to individual agents of those entities, such as law enforcement officers (Doc. 66, pp. 4-6).  Therefore, the Government argues that only the entities themselves, and not police officers as agents of those entities, may confer authority upon an individual to legally possess a machine gun.  One can only struggle with how that could come about, since an entity can only act through its agents.

Observing that reasonably differing interpretations of the law enforcement exception exist, the Court can, with the necessary assuredness, find that the phrase "by or under the authority of" is ambiguous as applied to Vest.  If the Court were to accept the Government's statutory interpretation – that the law enforcement exception applies to entities *only* – how would a police officer/lead rifle instructor such as Vest ever know whether his possession of a machine gun or other prohibited weapon was legal, as there is no guidance under **§ 922(o)(2)(A)** as to what constitutes proper authority?[4]  Would this require written authorization?  On the other hand, considering Vest's theory, a police officer may believe that as an agent of the police department, his possession of a machine gun as part of his employment is considered possession "*by* the police department" and is therefore legal, without need for obtaining further authority.

While keeping in mind that "'the practical necessities of discharging the

---

[4] Fortunately, the Court is not required to consider the even more confused tactical team members (SWAT team) who only take up automatic firearms on those occasions when conducting raids, executing large scale search or arrest warrants or other more dangerous endeavors they often encounter within the scope of their duties.

business of government inevitably limit the specificity with which legislators can spell out [statutory] prohibitions,'" ***Lim*, 444 F.3d at 915 (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952))**, upon further consideration, "authority" also presents a vagueness problem as applied to Vest.  During the hearing, when discussing whether a supervisor could have properly granted Vest the authority to legally possess the machine gun, his attorneys asked, "Where does [Vest's supervisor] get the evidence that he has the authority to grant it when there's no definition of what constitutes authority?" (Doc. 84 - Transcript, 25:17-19).  This inquiry dovetails with the previous discussion regarding the apparent ambiguity and vagueness of the "by or under" phrase of the law enforcement exception.

As previously stated, the true problem is that **§ 922(o)** points to nothing that gives guidance as to what "authority" is proper, thereby allowing a police officer's possession of a machine gun to be legal.  In other words, even if the highest ranked commanding officer within the state police department gave Vest the authority to possess the machine gun, it is uncertain from the plain text of the law enforcement exception as to whether that commanding officer's "authority" would be sufficient – even though one would likely assume so.  As such, the term "authority" as applied to Vest also appears vague and gives inadequate notice regarding the prohibited conduct of law enforcement officers.  Moreover, considering the Government's theory that "authority" only applies to entities, even if this authority for Vest to legally possess a machine gun as a police officer was granted via a written order issued by

the entity itself, inevitably some officer has to sign the order as an *agent* of the entity; this hypothetical situation operates to nullify the Government's statutory interpretation.

In the end analysis, putting oneself in the place of Trooper Vest, who is required to arm himself with an automatic weapon from time to time, taking the **Boyce** test into account and applying this particular statute, how is he ever to know when he is legally possessing any automatic weapon, whether the one at issue or any other?  He is not the State Police, the entity, as the Government suggests is required.  Nor does the statute give him guidance as to upon whom he can legally rely for authority without fear of prosecution.  **Boyce** suggests he is at peril, if the statute is valid.  If he refuses to possess an automatic weapon on his job, is he insubordinate and subject to discipline?  What is he to do?

Because the Court finds the law enforcement exception to be ambiguous and vague as applied to Vest, the rules of statutory construction allow the Court to look beyond the plain language reading of the statute to its legislative history in order to further aid in its interpretation.  ***See, e.g., Colon v. Option One Mortg. Corp, 319 F.3d 912, 917 (7th Cir. 2003)("[W]e think that the statute is sufficiently ambiguous to permit us to consult, albeit with great caution, the existing legislative history.")***.  The Court notes several key points emphasized during the Senate proceedings and debates regarding the Firearm Owners' Protection Act.  ***See 132 Cong. Rec. S5358-04, 1986 WL 774609, 99th Congress, 2d Session, (May***

**6, 1986).**  In a colloquy put on the record, Senator Dole inquired about the law enforcement exception to **§ 922(o)**, stating that it is "somewhat ambiguous language." **132 CONG. REC. S538-04, 99th Congress, 2d Session, 1986 WL 774609 at \*6 (May 6, 1986)**.  During his response, Senator Hatch stated that "[a]ny local police would be specifically covered by the language in this [law enforcement exception] provision permitting the transactions and possession to or by or under the authority of a subdivision of a State."  ***Id.* at \*6**.  Another explanatory statement made by Senator Hatch which the Court feels is particularly insightful when discussing the law enforcement exception was: "This amendment was designed to deal with *crime guns*, not weapons used to fight crime on a domestic or international scale."  ***Id.* at \*7**.  Later as part of the record, Senator McClure added:[5]

> All of us want to wipe out violent crime.  Unfortunately, the 1968 act did not achieve that goal.  This is not surprising.  Crime cannot be controlled by attacking an inanimate tool.  The Firearm Owners Protection Act is a complicated bill – it amends a complicated law.  This is part of the problem.  In an attempt to control the possession, transportation and sale of firearms, Congress and the enforcing agency developed a tangle of redtape.  The end result has been the entrapment of otherwise honest people into violations that neither hurt anyone, nor contribute to violent crime.  The aim of the Firearm Owners Protection Act is to redirect law enforcement toward the kind of transaction most likely to be a factor in violent firearms crime.  *In other words, we have to stop going after the guy who transposes a number in a zip code, and go after the dealer who is knowingly selling stolen guns, or knowingly selling to prohibited persons.*

---

[5]  It also appears that by Senator McClure's dialogue that one of the intentions of the bill was to "[m]andate an element of criminal intention for prosecution and conviction of Federal firearms law violations."  ***Id.***  However, the Court is left only to speculate as to why this was not included as part of **§ 922(o)**.

*Id.* at *16 (**emphasis added**).

The Court also notes the following passage from the earlier colloquy

between Senators Dole and Hatch:[6]

> **Mr. DOLE**.  The language of this new section intends that a machinegun may be transferred under the authority of a State or a subdivision thereof.  The House purposely did not choose to use the language "on behalf of" such an agency or subdivision, which is language contained in other provisions of current gun law.  Could this be read to permit a State or local police force to authorize its officers to purchase for themselves a machinegun which they might use in the line of their law enforcement work but which would be owned by the officer, not the police force itself?
>
> **Mr. HATCH.**  The Senator makes a good point.  Some police forces with financial difficulties have authorized their officers to purchase and register automatic weapons to prevent themselves from being outgunned if they should ever confront well-armed drug dealers or organized criminals.  This language appears to encompass that practice.  *It seems to me, however, that under these circumstances regulations would be necessary to govern disposition of those weapons in the event the officer leaves the police force.  In other words, possession or transfer of those weapons would cease to enjoy the authorization of the State agency or subdivision when the officer was no longer on the police force.*  The police force would then have to exercise its authority to guarantee that the machinegun was transferred to another entity authorized by the State or the United States to possess such weaponry.

*Id.* at *8-9 (**emphasis added**).

Considering the specific passages cited within this discussion, the Court

finds the legislative history indicates that the law enforcement exception was

---

[6]  This same passage was cited by the Government in support of its argument that only governmental entities are conferred "authority" under the law enforcement exception.  In the Court's reading of this same dialogue, it cannot find merit in the Government's assertion.

included because **§ 922(o)** was not intended to apply to police officers, but instead its purpose was to eliminate the use of machine guns and other various weapons used to commit crimes.  It does not appear that this statute was designed to criminalize police officers even if they may be guilty of mere technical violations.[7] Further, as there is no evidence to support the notion that Vest ever possessed or used the machine gun at issue in this case for anything other than law enforcement purposes, deeming Vest's possession of the machine gun as criminal seems to go against the purpose of **§ 922(o)** (Doc. 41 - Transcript of March 9, 2006 Motion to Suppress Hearing, 90:18-22)

### 2.    Arbitrary Enforcement

Another independent reason a statute may be found unconstitutionally vague is if it allows for arbitrary enforcement, as "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" ***Morales*, 527 U.S. at 60 (quoting *United States v. Reese*, 92 U.S.**

---

[7] Senator McClure also noted:

> The Firearms Owners Protection Act would correct various abuses which have occurred under the Gun Control Act of 1968.  The 1968 law was passed during an emotional period, when the Nation was reacting to two political assassinations.  The national judgment at that time was to take away rights enjoyed by many in order to prevent a recurrence of the outrageous abuses of a few.  *Each year's experience under the law brought with it new evidence that Congress had gone too far.  Hunters, Sportsmen, hobbyists, and collectors were being prosecuted for technical violations, diverting limited law enforcement resources from the pursuit of those guilty of truly criminal firearms use.*  S. 49 is the culmination of 7 years of painstaking debate and analysis over the deficiencies in the 1968 law and how they can be best corrected.

***Id*. at \*18 (emphasis added).**

**214, 221 (1876)**).  Vest argues that because the law enforcement exception allows for prosecutors, ATF agents and ultimately the jury, the to power to essentially define what type of possession is legal under the law enforcement exception, this results in selective prosecution.  Simply stated, Vest believes that the underlying problem with the statute "is that the Government gets to pick and choose who is covered by authority and who isn't" (Doc. 84 - Transcript, 15:15-17).

Meanwhile, the Government disagrees with Vest's assertion that **§ 922(o)** allows for selective prosecution and/or arbitrary enforcement.  However, this opposition is refuted by the Government's own statements during the August 17, 2006 hearing.  When arguing its position, the Assistant United States Attorney ("AUSA") recounted the hypothetical proposed as to whether police officers who fired the machine gun at issue during range qualification training also unlawfully possessed the weapon in violation of **§ 922(o)**, or whether they would have proper "authority" under the law enforcement exception, if they believed Vest, as the lead rifle instructor, had authority to allow them to fire the machine gun in the first place. In response to this hypothetical, the AUSA stated the following to explain why it would not prosecute those officers under **§ 922(o)**: "Those [police officers] are under a reasonable belief that the person handing them that weapon, an instructor, is imbued with the authority to have that weapon and to provide it to them.  They don't have to question that person.  They're not acquiring it in the fashion that this defendant did. . . ." (Doc. 84 - Transcript, 48:2-10).  On the other hand, if any law

enforcement officer understands that an automatic weapon is, in fact, one that was obtained illegally and he or she possesses it, even if only for the purpose of shooting for training, according to Alcohol, Tobacco and Firearms Agent Knobish (the case agent on this case), that officer is in violation of this statute and is a felon.  (Doc. 41 - Transcript of March 9, 2006 Motion to Suppress Hearing, 126: 22-25, 127: 1-2.)

The fact that the Government has to clarify a subset of police officers who would *not* be prosecuted under this statute bolsters the assertion that **§ 922(o)(2)(A)** allows for arbitrary enforcement because it allows the prosecution to essentially define the criminal behavior.  The AUSA's argument cited above presents the idea that for the police officers handling the machine gun, Vest's apparent or perceived authority is adequate to place them within the parameters of the law enforcement exception, so that such possession is not criminal.  Yet, nowhere in **§ 922(o)** is there so much as even a brief mention of this "apparent authority," as proffered by the Government.  Compare that with the agent's theory of who is in violation of the statute even when that apparent authority still exists.  This, too, is indicative of **§ 922(o)**'s potential for arbitrary enforcement.  Similarly, because there is not a statutory definition of authority for Vest, it will be left to the jury to ultimately determine what type of authority is proper and whether Vest therefore had the proper authority in order for the law enforcement exception to exonerate him.

The Court must address the Government's response to Vest's argument that the term "authority" found in the law enforcement exception is vague, offering

**27 C.F.R. § 478.134**[8] as specific administrative guidance (Doc. 66, pp. 7-8).  This

regulation pertains to the sale of firearms to law enforcement officers.  Consequently,

this regulation also serves to refute the Government's interpretation of **§**

**922(o)(2)(A)** that authority can be conferred by a governmental entity only.  It clearly

states in subsection (b)(1) that "[t]he following *individuals* are considered to have

*authority . . . .*"  Additionally, this authority is only "to certify that law enforcement

officers purchasing firearms [for official use] will use the firearms *in the*

---

[8]  **27 C.F.R. § 478.134** states:

**(a)** Law enforcement officers purchasing firearms for official use who provide the licensee with a certification on agency letterhead, signed by a person in authority within the agency (other than the officer purchasing the firearm), stating that the officer will use the firearm in official duties and that a records check reveals that the purchasing officer has no convictions for misdemeanor crimes of domestic violence are not required to complete Form 4473 or Form 5300.35. The law enforcement officer purchasing the firearm may purchase a firearm from a licensee in another State, regardless of where the officer resides or where the agency is located.

**(b)(1)** The following individuals are considered to have sufficient authority to certify that law enforcement officers purchasing firearms will use the firearms in the performance of official duties:

    **(i)** In a city or county police department, the director of public safety or the chief or commissioner of police.

    **(ii)** In a sheriff's office, the sheriff.

    **(iii)** In a State police or highway patrol department, the superintendent or the supervisor in charge of the office to which the State officer or employee is assigned.

    **(iv)** In Federal law enforcement offices, the supervisor in charge of the office to which the Federal officer or employee is assigned.

    **(2)** An individual signing on behalf of the person in authority is acceptable, provided there is a proper delegation of authority.

**(c)** Licensees are not required to prepare a Form 4473 or Form 5300.35 covering sales of firearm made in accordance with paragraph (a) of this section to law enforcement officers for official use. However, disposition to the officer must be entered into the licensee's permanent records, and the certification letter must be retained in the licensee's files.

*performance of official duties*." **27 C.F.R. § 478.134(b)(1) (emphasis added)**.  It mentions nothing regarding the transfer or possession of a firearm, particularly a machine gun.  Thus, the Court cannot, in good conscience, find that **27 C.F.R. § 478.134** serves to sufficiently elucidate the vagueness of the law enforcement exception as applied to Vest.

The Government's reliance on ***Boyce Motor Lines*** for its argument that Vest is acting "at his own peril" if he tries to fit within the exception **§ 922(o)**'s well-defined prohibition on the private possession of machine guns does not alleviate the problem that the law enforcement exception as applied to Vest is vague.  Therefore, a police officer such as Vest is not only unable to determine *how* to properly acquire proper authority in order to place his conduct within the law enforcement exception, but is also subjected to possible arbitrary enforcement for non-conforming behavior. The Court finds that the Government's arguments do not counter the finding that the law enforcement exception – **26 U.S.C. § 922(o)(2)(A)** – is unconstitutionally vague as applied to Vest in his capacity as a police officer, equipment officer and/or lead rifle instructor for the Illinois State Police.  Accordingly, Count I of the Superceding Indictment (Doc. 30) against Vest must be dismissed.

**C.**   **26 U.S.C. §§ 5861(b) and (d)**

**26 U.S.C. § 5861** provides, in pertinent part:

It shall be unlawful for any person–

(b) to receive or possess a firearm transferred to him in violation of the provisions of this chapter; or

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

Vest was charged in Count II for violating **§ 5861(b)** and in Count III for violating **§ 5861(d)**.   Section **5861**, unlike **§ 922(o)**, does not contain a law enforcement exception.   Rather, it appears to be a strict liability statute, as there is also no requisite *mens rea*.   Vest's attorneys, during the hearing, proposed the hypothetical that all of the members of the Illinois State Police SWAT team would then technically be in violation of these two subsections of **§ 5861**, because the machine guns they possess as part of their employment, are not actually registered to them individually.   Instead, they are registered to the Illinois State Police and thereafter issued to each SWAT team member.   With this in mind, Vest's attorneys asked the Court whether all of these SWAT team members would be prosecuted for violating **§§ 5861(b)** and **(d)** as Vest has been (Doc. 84 - Transcript, 61:20 - 62:14). In sum, there appears to be no way for these hypothetical SWAT team members to conform their conduct within the legal confines of **§§ 5861(b)** and **(d)**.

This hypothetical presents an even clearer example of how a penal statute can be unconstitutionally vague due to its potential for arbitrary enforcement.

Page 24 of 26

Even though the Government once again opposed the notion that this statute was unconstitutionally vague, during the hearing, the AUSA once again had to clarify exactly under what circumstances the Government would choose *not* to prosecute a police officer possessing a machine gun, explaining the Government would not choose to prosecute "anyone who handled a weapon handed to them by another individual who they believe, reasonably believed had the authority to possess it" (Doc. 84 - Transcript, 69:25-70:2).  This explanation offered by the Government evidences its inappropriate power to determine what constitutes illegal behavior under **§§ 5861(b)** and **(d)**.  The resultant ability of the Government to thereby define criminal behavior under this statute is prohibited by the Constitution and binding precedent.  ***See, e.g., Morales*, 527 U.S. at 60 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1876))**

Recalling that the purpose of Firearms Act, of which **§ 5861** is a part, is to go after crime weapons and not law enforcement weapons, the Court finds **§§ 5861(b)** and **(d)** unconstitutionally vague as applied to Vest as a police officer/lead rifle instructor, because it allows for complete arbitrary enforcement.  As previously noted, the weapon at issue was registered to the Illinois State Police. (Doc. 41 - Transcript of March 9, 2006 Motion to Suppress Hearing, Agent Knobish, 86:12-14.) Much of the same analysis developed as to Count I is applicable to Count II and III. Counts II and III of the Superceding Indictment (Doc. 30) against Vest must also be dismissed.  Defendant Vest's Motions to Dismiss (Docs. 38 and 55), pertaining to

their void for vagueness "as applied" grounds, are hereby **GRANTED**.

## IV.  <u>CONCLUSION</u>

The Court finds that all three Counts against Vest as stated in the Superceding Indictment (Doc. 30) must be dismissed on the grounds that **§ 922(o)(2)(A)**, and **§§ 5861(b)** and **(d)**, are unconstitutionally vague as applied to Vest for his possession of a machine gun while serving as a police officer, equipment officer and/or lead rifle instructor for the Illinois State Police.  As such, Defendant Vest's Motions to Dismiss the Superceding Indictment (Docs. 38 & 55), based on the asserted grounds of unconstitutional vagueness "as applied" to him, are hereby **GRANTED**.  Counts I, II, and III are hereby **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

Signed this 30th day of August, 2006.

<u>/s/        David  RHerndon</u>
**United States District Judge**